818 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald BELIC; Guy Bentley; Wayne Furr; Greal Milthaler;
Shirley Mitchell; Lionel Penley; Bayless Slone;
Henrick Stampfli, and Michael Stockler,
Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION; International Union of
Electrical, Radio and Machine Workers, AFL-CIO-CLC; Local
801 of the International Union of Electrical, Radio and
Machine Workers, AFL-CIO-CLC, Defendants-Appellees.
 No. 86-3246.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1987.
 
 Before MARTIN and MILBURN, Circuit Judges, and ALDRICH, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, employees of defendant-appellee General Motors Corporation ("GM"), and members of defendants-appellees International Union of Electrical, Radio and Machine Workers, AFL-CIO-CLC, and Local 801, International Union of Electrical, Radio and Machine Workers, AFL-CIO-CLC, appeal from the district court's entry of a directed verdict in favor of defendants-appellees in this hybrid action brought pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), alleging that General Motors breached the collective bargaining agreement and that the International Union and Local 801 breached their duty of fair representation. For the reasons that follow, we affirm.
 
 I.
 
 2
 The GM facility involved in this litigation was originally operated by its then Frigidaire Division in Moraine, Ohio. In 1979, GM decided, for economic reasons, to sell the Frigidaire Division to White Consolidated Industries and convert the plant to the assembly of light trucks and engines under the company's Chevrolet Division. The conversion process was expected to take about two years, during which time all Frigidaire employees would be laid off except for a few skilled craftsmen involved in the conversion. The Unions and GM agreed that laid-off Frigidaire workers would be rehired in the assembly plant.
 
 
 3
 During the summer of 1979, GM and Local 801 negotiated a series of agreements known as the "Local Agreement" for the "Chevrolet-Moraine.Assembly Plant." Chevrolet had fewer Skilled Trades classifications than Frigdaire and also required different skills in some instances. Thus, one of the agreements provided that a new "Welder Equipment Maintenance & Repair" ("WEMR") classification would be established at the assembly plant and would be filled by former Frigidaire workers who had been in analogous classifications at the Frigidaire plant. This agreement further provided that "[t]he priority recall to the Chevrolet Skilled Trades Classifications are all Journeymen first based upon their Skilled Trades Seniority dates, and then a combination of Apprentices and Upgraders based upon their Skilled Trades date of entry."
 
 
 4
 Between August and October of 1980, plaintiffs, all of whom were Journeymen, were recalled on the basis of their Frigidaire Skilled Trades seniority dates, and were assigned to the WEMR classification. After all Journeymen were recalled, Upgraders with Skilled Trades seniority dates earlier than plaintiffs were hired to fill the WEMR classification. When these individuals obtained their Journeymen status, their Skilled Trades seniority date was related back to the date they entered into the skill while employed at the Frigidaire plant. The Upgraders then "passed" plaintiffs on the seniority list.
 
 
 5
 In February 1982, plaintiff Mitchell, who had been bumped to second shift as a result of the Upgraders "passing him" on the seniority list, attempted to file a grievance regarding his seniority rights. Local 801 refused to accept his grievance on the ground that the contract had not been violated. In October 1982, all plaintiffs, including Mitchell, filed a request for a shift preference which was denied by GM. Plaintiffs then submitted grievances challenging their seniority status.
 
 
 6
 Plaintiffs asserted that they should have been given a new seniority date consistent with their reclassification to the WEMR classification. Plaintiffs relied upon Section ii, Paragraph (6) of the "Local Agreement" which provided that "[w]hen a Journeyman is transferred from one skilled trades classification to another, there will be no loss of seniority; however, he will have a date of entry seniority in the classification to which he is transferred and will also retain and accumulate seniority in the classification from which he was transferred." Local 801 withdrew the grievances in December 1982, finding that Section II, Paragraph (6) of the "Local Agreement" was applicable only to Skilled Trades employees after they had been recalled and that the grievances were without merit.
 
 II.
 
 7
 Plaintiffs argue that the district court erred by granting a directed verdict in favor of defendants on the breach of the duty of fair representation claim. The district court noted that "[a] breach of the duty of fair representation occurs when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Further, the district court determined that the only inference that could reasonably be drawn from the evidence was that the grievances were withdrawn because Local 801 believed they were without merit. Finally, the district court determined that, absent a breach of the duty of fair representation, plaintiffs could not maintain an action based upon the alleged breach of the collective bargaining agreement.
 
 
 8
 District Judge Walter Rice's thoughtful analysis was unquestionably correct. The Supreme Court held in Vaca v. Sipes, 386 U.S. 171 (1967), that a union breaches its duty of ' fair representation in the grievance-arbitration process only when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Id. at 190. The Court recognized that while a union must assess the merits of particular grievances in good faith and in a nonarbitrary manner, the union is not required to process grievances which are without merit. "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined...." Id. at 191. The Court further recognized that the appropriate judicial inquiry is not whether the particular grievances were meritorious, but whether the union's handling of the grievances was arbitrary or in bad faith. "[I]f a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced." Id. at 192-93.
 
 
 9
 Plaintiffs mistakenly attempted to establish that Local 801 and the International Union breached their duty of fair representation by proof that the underlying grievances were meritorious. see Vaca, 386 U.S. at 195. Plaintiffs produced no evidence to show that Local 801's withdrawal of the grievances was arbitrary, discriminatory or in bad faith. On the contrary, plaintiffs' testimony suggests that Local 801 considered plaintiffs' grievances and withdrew them only after determining that the grievances were without merit. In the absence of any evidence of arbitrariness, discrimination or bad faith on the part of Local 801 or the International Union, the district court's entry of a directed verdict in favor of defendants on the breach of the duty of fair representation claim was entirely appropriate. See, e.g., Schultz v. Owens-Illinois Inc., 696 F.2d 505, 517 (7th cir. 1982).[1]
 
 
 10
 Plaintiffs assert the district court further erred by finding that plaintiff Mitchell's claim was time-barred and by finding that the International Union was not a proper defendant. Because the district court was correct in directing a verdict on the breach of the duty of fair representation claim, we need not reach these issues.
 
 III.
 
 11
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Because a breach of the duty of fair representation was an essential prerequisite to plaintiffs' action under section 301(a), plaintiff's action against GM must also fail. See Schultz, 696 F.2d at 514